IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ERIK SERRANO, | ) |
|     Plaintiff, | ) No. 21 C 105 |
| v. | ) Magistrate Judge M. David Weisman |
| MENARD, INC., | ) |
|     Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff ("Serrano") sues defendant for negligence. The case is before the Court on defendant's motion pursuant to Federal Rule of Civil Procedure 56 for summary judgment, and defendant's *Daubert*[1] motion pursuant to Federal Rule of Evidence 702 to bar expert testimony of John Peterson. For the reasons set forth below, the Court grants the motion for summary judgment and denies the *Daubert* motion as moot.

## Facts[2]

Defendant operates a hardware store in Bolingbrook, Illinois. (ECF 56 ¶ 1). Serrano was a guest at the store on October 16, 2018. (*Id.* ¶ 2). Specifically, Serrano was shopping at the self-service outdoor lumberyard that is part of defendant's store. (*Id.* ¶ 7). Despite the self-service nature of the lumberyard, there is a sign that generally states, "ask if you need help." (*Id.* ¶ 4). Defendant's employees are assigned to assist guests in the yard and inspect the yard daily. (*Id.* ¶¶ 5-6). Serrano was shopping for 4x10' sewer pipes (PVC pipes), which weigh about 10-15 pounds

---

[1] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *See also* FED. R. EVID. 702.
[2] These facts are undisputed unless noted otherwise.

each. (*Id*. ¶¶ 7-8). Serrano has purchased these pipes hundreds, if not thousands of times before. (*Id*. ¶ 13). In the lumberyard, the pipes that were for sale were displayed vertically and located near the hood of the truck depicted in this photograph[3]:



(*Id*. ¶ 9).

Approximately 15 minutes before Serrano's injury, defendant's Assistant General Manager, Adam Franco, observed that the vertical stack of 4x10' sewer pipes was full. (*Id*. ¶ 11). Serrano retrieved several pipes from the vertical stack and placed them in his truck. (*Id*. ¶ 12). Near the rear of the truck, and to the right of vertical pipes, was a large bunk of PVC pipes on a pallet staged on a shelf, as depicted in this photograph:[4]



---

[3] The truck in the photograph is not Serrano's truck, as the Court understands it. Rather, this appears to be a staged photograph to recreate the scene of the accident. Plaintiff does not dispute the depiction contained in this photograph, nor the following photograph.
[4] This photograph depicts the post-accident bunk. In other words, prior to the accident, all of the pipes were on the shelf and secured by straps.

(*Id.* ¶ 14).

Defendant asserts that this large bunk of PVC pipes was in an "overstock area," and the bunk was not listed for sale by a price sign. (*Id.* ¶ 15). Plaintiff disagrees that there was no price sign located near the bunk. (ECF 64 ¶ 15).[5] In any event, the parties agree that the large bunk of pipes was bound with at least two heavy duty plastic straps. (ECF 56 ¶ 17). Moreover, the outer straps of the bunk held in place smaller bundles of PVC pipes that were banded together with black straps. (*Id.* ¶ 18). Serrano had never accessed pipes from this section of the lumberyard before. (*Id.* ¶ 23). The large bunk of pipes weighed approximately 400 pounds and was stacked on a shelf beginning around Serrano's chest level. (*Id.* ¶¶ 20-21).

Nevertheless, Serrano intended to retrieve individual 4x10' pipes from the bunk; his plan was to cut one or two bands to slip two to three pipes out of the bunk. (*Id.* ¶ 39). He did not ask anyone for help. (*Id.* ¶ 24). Rather, Serrano used a personal knife to cut the large outer band on the left side of the bunk. (*Id.* ¶ 27). After cutting the strap, Serrano slid the pipes within the PVC bunk to the left and right to try and remove them, and then rocked the bunk's individual pipes back and forth for three to four minutes to try and remove them from the PVC bunk. (*Id.* ¶¶ 28-29). Eventually, the contents of the PVC bunk gave way and fell on Serrano. (*Id.* ¶ 30). Serrano had never previously cut the bands on bundles of overstock pipe. (*Id.* ¶ 26).

## Discussion

To prevail on a summary judgment motion, "the movant [must] show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At this stage, the Court does not weigh evidence or determine the

---

[5] As discussed, *infra*, we find that this disputed fact is not material to the summary judgment analysis.

truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court views all evidence and draws all inferences in favor of the non-moving party. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).

A district court's evaluation of expert testimony under *Daubert* does not "take the place of the jury to decide ultimate issues of credibility and accuracy." *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012); *see also Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753, 765 (7th Cir. 2013) ("the district court's role as gatekeeper does not render the district court the trier of all facts relating to expert testimony"). Once it is determined that "the proposed expert testimony meets the *Daubert* threshold of relevance and reliability, the accuracy of the actual evidence is to be tested before the jury with the familiar tools of 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.' " *Lapsley*, 689 F.3d at 805 (quoting *Daubert*, 509 U.S. at 596). A district court's inquiry under *Daubert* is a flexible one and district courts have wide latitude in performing this gate-keeping function. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

In Illinois,[6] a plaintiff asserting a common law negligence claim "must establish the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach." *Choate v. Ind. Harbor Belt R.R. Co.*, 2012 IL 112948 ¶ 22, 366 Ill.Dec. 258, 980 N.E.2d 58, 64 (2012). The term "duty" means "a relationship between the defendant and the plaintiff such that the law imposes on the defendant an obligation of

---

[6] The parties agree that Illinois law applies to this diversity action.

reasonable conduct for the benefit of the plaintiff." *Id*. The elements of breach and proximate cause "are factual matters for the [finder of fact] to decide, provided there is a genuine issue of material fact regarding those issues." *Marshall v. Burger King Corp.*, 222 Ill.2d 422, 430, 305 Ill.Dec. 897, 856 N.E.2d 1048, 1054 (2006). Proximate cause "is a question of fact for the [finder of fact] unless there is no material issue regarding the matter or only one conclusion is clearly evident." *Williams v. Univ. of Chi. Hosps.*, 179 Ill.2d 80, 88, 227 Ill.Dec. 793, 688 N.E.2d 130, 134 (1997).

## The *Daubert* Motion

As a preliminary matter, defendant brings a *Daubert* motion contemporaneously with its summary judgment motion. Specifically, defendant argues that the five opinions laid out in plaintiff's expert's (John Peterson's) report must be stricken for failure to satisfy the *Daubert* standard. However, the Court finds that resolving defendant's *Daubert* motion is not necessary to resolving the summary judgment motion. Indeed, defendant does not argue that plaintiff's negligence action fails as a matter of law *if* plaintiff's expert's opinions are barred. Defendant's summary judgment motion barely references plaintiff's expert.[7] Moreover, Serrano does not argue that Peterson's opinions—if admitted—defeat defendant's motion for summary judgment (particularly as it relates to the "open and obvious doctrine," discussed *infra*). Thus, because the Court does not find it essential to rule on defendant's *Daubert* motion before resolving the summary judgment motion, we deny defendant's *Daubert* motion as moot. *See Africano v. Atrium Med. Corp.*, No. 17-CV-7238, 2021 WL 2375994, at *2 at FN3 (N.D. Ill. June 10, 2021) (denying certain *Daubert* motions as moot when not "germane" to the summary judgment

---

[7] The Court determined that plaintiff's expert was only mentioned one time within defendant's summary judgment motion. *See* ECF 55.

analysis); *see also Flagstar Bank, FSB v. Freestar Bank, N.A.*, 687 F. Supp. 2d 811, 821–22 (C.D. Ill. 2009) (denying a motion to strike expert report as moot because not "essential" to ruling on summary judgment motions).

## The Summary Judgment Motion

In its motion for summary judgment, defendant argues that Serrano's negligence claim must fail for four independent reasons:

(1) There is no evidence that defendant caused Serrano's injury;
(2) The bunk did not present an unreasonable risk of harm;
(3) There is no evidence that defendant had notice that the bunk would cause harm to a guest; and/or
(4) The bunk presented an open and obvious condition.

The Court finds that the "open and obvious doctrine" is dispositive of this case, and, accordingly, we focus our analysis on that issue.

### A. Open and Obvious Doctrine

"In Illinois, the open and obvious doctrine is an exception to the general duty of care owed by a landowner." *Park v. Northeast Illinois Regional Commuter R.R. Corp.*, 2011 IL App (1st) 101283, ¶ 12, 355 Ill.Dec. 882, 960 N.E.2d 764 (citing Restatement (Second) of Torts § 343A(1) (1965)). "When a condition is deemed open and obvious, the likelihood of injury is generally considered slight as it is assumed that people encountering potentially dangerous conditions that are open and obvious will appreciate and avoid the risks." *Id*. "The existence of an open and obvious danger is not an automatic or *per se* bar to the finding of a legal duty on the part of a defendant." *Bruns v. City of Centralia*, 21 N.E.3d 684, 690 (Ill. 2014). However, the open and obvious character of a particular danger will implicate the first two factors of the duty

analysis—that is, the reasonable foreseeability of the injury and the likelihood of the injury. *See McCarty v. Menard, Inc.*, 927 F.3d 468, 471 (7th Cir. 2019).

The essence of the doctrine is that people can protect themselves from danger that they can see coming. "In other words, the law expects ordinary people to take some care for their own safety." *See Hillsamer v. Walmart, Inc.*, 2022 WL 4079451, at *4 (N.D. Ill. 2022). "In cases where the open and obvious [doctrine] applies, traditionally the plaintiff affirmatively performed an action despite the presence of some obvious danger." *Patel v. Home Depot USA, Inc.*, 2020 WL 7027633, at *3 (N.D. Ill. 2020) (collecting cases). Whether a condition of the property is open and obvious "is an objective inquiry." *Id*. "The question is would a reasonable person with [the plaintiff's] knowledge of the situation appreciate and avoid the hazardous condition?" *Id*. (citing *Dunn v. Menard, Inc.*, 880 F.3d 889, 908 (7th Cir. 2018)). When the facts are undisputed, it is a question of law whether the dangerous condition appears open and obvious. *Id*.

Defendant argues that Serrano's actions toward the large bunk of pipes—which was secured with at least two heavy duty straps on a shelf—was an open and obvious hazard, and that any reasonable guest would have appreciated the danger of opening the bunk with a knife. Accordingly, defendant asserts that the open and obvious doctrine eliminates any duty defendant owed to Serrano.

In response, Serrano initially argues that the open and obvious doctrine does not apply to his claim for two threshold reasons. First, he argues that the doctrine does not apply to ordinary negligence actions, asserting that it only applies to premises liability claims. Further, citing to *Hutson v. Pate*, 2022 IL App (4th) 210696, Serrano argues that even if the open and obvious doctrine did apply to ordinary negligence claims, it does not apply to this action because the condition that caused his injury was not "on the land."

We disagree with Serrano on both points. First, Serrano is incorrect that the open and obvious doctrine does not apply to ordinary negligence claims. *See Bruns*, 21 N.E.3d at 687, 689–90. Defendants are "entitled to raise the open-and-obvious rule to either an ordinary-negligence claim or a premises-liability claim." *See Kun Mook Lee v. Young Rok Lee*, 2019 IL App (2d) 180923, 440 Ill. Dec. 1, 149 N.E.3d 551, 557 (2019); *see also Hutson v. Pate*, 2022 IL App (4th) 210696, 2022 WL 2751689, at *6 (2022) ("[T]he doctrine may apply in both premises liability and ordinary negligence cases ....") (collecting cases).

We also disagree with Serrano's assertion that the condition giving rise to his injury was not "on the land." Serrano is correct that, in *Hutson*, an Illinois appellate court held that the open and obvious doctrine applies in ordinary negligence "only when the alleged cause of injury is a condition on the land instead of a defendant's active negligence." *Id*. ¶ 42. However, the court went on to detail this distinction as it had been applied in prior Illinois cases, and then analyzed whether the cause of injury at issue in *Hutson* was "on the land." *Id*. ¶¶ 57-63. The court's analysis—which Serrano failed to apply here in any meaningful way—is instructive. In *Hutson*, plaintiff's injury was caused by defendant's unexpected yanking of a garden hose, which caused plaintiff to fall to the ground and injure her ankle. *Id*. ¶ 1. The court determined that defendant's active role in yanking the hose was the condition causing the injury, not the hose itself: "the condition of the hose was merely the instrumentality of J.H.'s injury, not its cause." *Id*. ¶ 62. Thus, the open and obvious doctrine did not apply to the ordinary negligence claim underlying *Hutson*.

In contrast, here, there was no similar active negligence on the part of defendant. To the contrary, it was *plaintiff's* activity toward a heavy bunk of pipes on defendant's property that caused the injury. Additionally, prior examples of conditions deemed to be open and obvious

hazards "on the land" include piles of snow (*Winters v. MIMG LII Arbors at Eastland, LLC*, 2018 IL App (4th) 170669, 425 Ill.Dec. 727, 115 N.E.3d 282), store posts (*Ward v. K Mart Corp.*, 136 Ill. 2d 132, 143 Ill.Dec. 288, 554 N.E.2d 223), moving trains (*Park v. Northeast Illinois Regional Commuter R.R. Corp.*, 2011 IL App (1st) 101283, ¶ 21, 355 Ill.Dec. 882, 960 N.E.2d 764), electrified third rails (*Jae Boon Lee v. Chicago Transit Authority*, 152 Ill. 2d 432, 444-45, 178 Ill.Dec. 699, 605 N.E.2d 493 (1992)), and power wires (*Genaust v. Illinois Power Co.*, 62 Ill. 2d 456, 343 N.E.2d 465 (1976)). These conditions are sufficiently analogous to the instant case to find that the condition causing Serrano's injury was "on the land" as opposed to active negligence on the part of defendant.

Having dispensed with Serrano's arguments about the doctrine's applicability at a threshold level, we now turn to the core of the open and obvious analysis. That is, we now analyze whether a reasonable person with Serrano's knowledge of the situation would have appreciated and avoided the hazardous dangers of cutting loose and rocking a heavy bunk of pipes back and forth for three to four minutes. On this point, Serrano claims that a reasonable person could not have foreseen that taking one pipe out of the bunk would cause the incident at hand, and therefore defendant owed a duty to protect against his injury. Serrano also points out that the bunk of pipes was not clearly marked as being overstock and not for sale, and that he had been told on prior occasions that the yard was generally self-serve unless the product required a forklift.[8]

The Court disagrees. First, Serrano's innocuous description of the incident ("taking one pipe out of the bunk") fails to account for what Serrano actually did. As already stated, Serrano

---

[8] Serrano testified that he had previously been advised by defendant's employees to climb up on a shelf to retrieve products on his own (if the product did not require a forklift).

used a personal knife to cut one of the heavy-duty straps that was securing the large number of pipes (which collectively weighed around 400 pounds) and proceeded to rock the pipes back and forth to try and extract individual pipes. He did this for three to four minutes until the bunk collapsed. Those actions are far different than simply removing one pipe from a bunk and having the entire mechanism collapse as a result. The Court fails to see how any reasonable person would have behaved in the way Serrano did. It is common sense that cutting a heavy-duty strap securing a large number of weighty pipes, and then proceeding to shake the pipes back and forth, could result in many (if not all) of the pipes falling down.[9]

Serrano's other arguments as to the self-service nature of the lumberyard and the ambiguous nature of whether the bunk was for sale are also unavailing. Defendant had a sign in the yard directing customers to ask if they needed assistance, and whether or not the bunk was clearly marked as not for sale does not change the unreasonableness of Serrano's conduct. Even if the strapped bunk of pipes had mistakenly been marked as for sale, the Court is unconvinced that Serrano's conduct would have been any more reasonable, for the reasons already detailed. Further, even accepting as true that defendant's employees had previously directed Serrano to "climb up on shelves" to retrieve products in the lumberyard that did not require a forklift, the Court notes that this large bunk of pipes did, in fact, require a forklift. (ECF 56 ¶ 36). In sum, even making all inferences in Serrano's favor, the Court finds that his actions toward the heavy bunk of pipes were plainly unreasonable.

---

[9] A recent Illinois appellate decision is analogous and supports our conclusion. *In Kun Mook Lee v. Young Rok Lee*, 2019 IL App (2d) 180923, the plaintiff climbed a ladder that was tied to another ladder, and cut a tree limb against which the ladder was itself leaning. *Id*. ¶ 5. Applying the open and obvious doctrine, the court determined that the defendant landowner had no duty to protect against the risk entailed by plaintiff's conduct: "We fail to understand how any reasonable person could not have appreciated the open-and-obvious danger of tying two ladders together and placing those ladders against a tree limb 20 to 25 feet above the ground, the very limb that he was attempting to cut down." *Id*. ¶ 27. The illogical behavior in *Kun Mook Lee* is sufficiently similar to Serrano's behavior in this case to find that the open and obvious doctrine also applies.

Accordingly, we find that a reasonable person with Serrano's knowledge would have appreciated the open and obvious danger posed by cutting and shaking the heavy bunk of pipes and avoided such conduct.

### B. No Exceptions to the Open and Obvious Doctrine Apply

Illinois' law recognizes two exceptions to the open and obvious doctrine: the "distraction exception," and the "deliberate encounter exception." *Bruns v. City of Centralia*, 2014 IL 116998, ¶ 20, 21 N.E.3d 684, 691 (internal citations omitted).

The distraction exception applies " 'where the possessor [of land] has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it.' " *Sollami v. Eaton*, 201 Ill.2d at 15, 265 Ill.Dec. 177, 772 N.E.2d 215 (2002) (quoting Restatement (Second) of Torts § 343A cmt. f, at 220 (1965)).[10]

The deliberate encounter exception applies " 'where the possessor [of land] has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk.' " *Id*. (quoting Restatement (Second) of Torts § 343A cmt. f, at 220 (1965)). ). Further, this exception usually applies to cases "involving some economic compulsion, such as when a plaintiff is forced to choose between facing danger and neglecting his duties to an employer." *See Dunn v. Menard, Inc*., 880 F.3d at 909 (cleaned up). In other words, it applies in situations where "workers are compelled to encounter dangerous conditions as part of their employment obligations." *See Gammons v. Crown Castle USA, Inc*., 2019 WL 1168104, at *3 (N.D. Ill. 2019)

---

[10] Serrano does not argue that the distraction exception applies. Thus, we need not analyze that exception.

(quoting *Lucasey v. Plattner*, 2015 IL App (4th) 140512, 390 Ill. Dec. 393, 28 N.E.3d 1046, 1056 (2015)).

Serrano claims that the deliberate encounter exception applies. The Court disagrees. Although the lumberyard was generally self-serve, it was not expected that a customer would incur great risk by cutting straps securing a large number of heavy pipes on a shelf, and then rock the pipes back and forth for three to four minutes, particularly when the benefit of doing so (obtaining merchandise from a hardware store) seems tiny compared to the risk involved (serious injury). Moreover, we do not agree with Serrano that he was economically compelled to conduct himself in this way. Although Serrano may have been obtaining pipes for a job, there is no indication that he was ordered to do so by a boss or employer, or that there was some sort of accelerating factor that compelled Serrano to retrieve the products in an expedited manner without taking proper precautions. *See Gammons* at *3 (declining to apply the deliberate encounter exception when there was not any economic compulsion present for plaintiff "to undertake the work assignment immediately instead of taking time to take appropriate precautions."). Thus, finding no economic compulsion—or any other factor that would cause Serrano to incur great risk without taking proper precautions—we find that the deliberate exception encounter does not apply.

Accordingly, we find that the cause of Serrano's injury was open and obvious, and no exception applies.

### C. Additional Duty Analysis

Because the existence of an open and obvious hazard is not an absolute bar to finding a legal duty, we must also assess whether defendant owed a duty of care to Serrano applying the

traditional duty analysis. *See Dunn*, 880 F.3d at 909-10; *Bruns*, 386 Ill.Dec. 765, 21 N.E.3d at 690. "The four factors courts typically consider in determining whether a duty exists are: (1) the reasonable foreseeability of injury; (2) the likelihood of injury; (3) the magnitude of the burden of guarding against injury; and (4) the consequences of placing that burden on the defendant." *Wilfong v. L.J. Dodd Const.*, 401 Ill.App.3d 1044, 341 Ill.Dec. 301, 930 N.E.2d 511, 519 (2019); *see also LaFever v. Kemlite Co.*, 185 Ill.2d 380, 235 Ill.Dec. 886, 706 N.E.2d 441, 446 (1998).As to the first two factors, "[w]here the condition is open and obvious, the foreseeability of harm and the likelihood of injury will be slight, thus weighing against the imposition of a duty." *Bruns*, 386 Ill.Dec. 765, 21 N.E.3d at 690. We are then left with a final question—do the third and fourth factors involving the store's burden in guarding against safety hazards outweigh the first two factors? *Dunn*, 880 F.3d at 910. Here, they do not.

As previously mentioned, defendant has team members available to assist customers in obtaining overstocked or unavailable products, and those team members conduct daily inspections of the lumberyard. There is also no evidence that defendant had received prior complaints about the pipes at issue. Serrano testified that he had never cut the straps on bundles of overstock pipe before—he had purchased pipes without resorting to this conduct hundreds if not thousands of times previously—and no party involved in this case was personally aware of any similar instances of customers cutting straps of bundles of pipes that were not for sale. Further, there is no indication that anything other than Serrano's actions caused the pipes to become loose. Thus, imposing a duty on defendant to prevent injuries such as the one caused by Serrano's unusual behavior would be too onerous and disconnected from normal customer behavior in hardware stores. *See Hillsamer v. Walmart, Inc.*, No. 20 C 6753, 2022 WL 4079451, at *4 (N.D. Ill. Sept. 6, 2022) ("Establishing a duty for Walmart to guard against all conceivable

customer injuries from [obvious hazards] at all times would impose too great a burden in such circumstances.).

Because we have found that defendant did not owe Serrano a duty of care, we need not address defendant's other arguments, or the other elements of a negligence action. We grant defendant summary judgment. *See Bagent v. Blessing Care Corp.*, 224 Ill. 2d 154, 163, 308 Ill.Dec. 782, 862 N.E.2d 985 (2007) (summary judgment for defendant is proper if plaintiff fails to establish any element of cause of action).

## Conclusion

In sum, we find that defendant had no duty to protect Serrano from the open and obvious danger that the large bunk of secured pipes entailed. Therefore, because Serrano cannot establish element number one of a negligence claim—duty—his claim must fail. The Court grants defendant's motion for summary judgment [54], denies defendant's motion to bar expert testimony of John Peterson [53] as moot, and terminates this case.

**SO ORDERED.**                          **ENTERED:**

**Dated: May 2, 2023**

                                                         **M. David Weisman**
                                                         **United States Magistrate Judge**